## THE WEST IRA.

District Court, E. D. Louisiana.    January 31, 1928.

No. 19002.

Depositions ⬭11—Equity court held to have authority to issue commission to perpetuate testimony by causing survey of conditions found on burned ship (28 USCA § 644).

A steamship took fire and was damaged while under repair by a contractor. The boiler room, where the fire originated and where contractor's employees were working at the time and left their tools and equipment, including acetylene tanks and torch, was flooded in extinguishing the fire. *Held*, that Rev. St. § 866 (28 USCA § 644), providing for perpetuating testimony, was broad enough to authorize a court of equity to appoint a commissioner to take charge of the ship and make a survey and report of conditions as found when the water was pumped out, to be used as evidence in a contemplated suit against the contractor for negligence causing the fire.

In Equity. Proceeding by the United States, as owner of the steamship West Ira, to perpetuate testimony. Decree perpetuating evidence disclosed by survey.

Joseph M. Rault and Walter Carroll, both of New Orleans, La., for exceptor and mover.

Edouard F. Henriques, of New Orleans, La., for petitioner.

BURNS, District Judge. This proceeding was commenced by a bill in equity filed January 12, 1928, on the relation of the United States of America, as owner of the steamship West Ira, which had been damaged by a fire on January 9, while the Todd Engineering Dry Dock & Repair Company, Inc., were doing repair work upon the boilers and boiler doors under a contract, and while the vessel was lying at a public wharf in the Mississippi river at New Orleans.

The bill alleged that the fire was first discovered near the boiler room door, upon which the workmen were engaged; that they abandoned the ship, leaving their tools and equipment where they lay while the fire spread through the ship; in extinguishing the fire, the ship was flooded with water, and, to prevent damage to other property in the port, she was towed below the city, where, to prevent sinking by the water poured into her, she was beached; that this salvage water was being pumped out at the time the bill was filed, the fire having been extinguished; that the purpose of the bill was to ascertain the cause of the fire, it being probable that, when the water was sufficiently pumped to expose the floor of the boiler room, the condition and position of the tools and equipment, which included acetylene gas tanks and an acetylene gas torch with certain hose attachment, would constitute primary evidence of the cause of the fire.

It was further alleged, upon information and belief, that the fire resulted from negligence in the use of these tools and equipment; that, if these facts could be established by such evidence, the petitioner might pursue its remedy for the damages resulting from such negligence in proper proceedings.

Pursuant to the prayer of the bill, an order issued in the nature of a commission to take testimony under Rev. Stat. § 866 (28 USCA § 644), in perpetuam rei memoriam, and one J. G. Lanman was appointed commissioner with authority to cause a thorough survey of the condition existing in the fire room, and meanwhile to restrain all persons from entering therein or interfering therewith, taking physical possession of the tools and equipment if necessary; to make a full report or procés verbal thereof returnable into court.

His report was made and filed on January 13, showing that he had appointed two marine surveyors, who had proceeded in his presence, together with five others who represented the Todd Engineering Dry Dock & Repair Company, Inc., two representatives of the United States Shipping Board, two representatives of Lykes Bros., the operating agents of the vessel, one representative of the United States Salvage Association, one representative of the American Bureau of Shipping, one representative of the cargo underwriters, and also the two attorneys for the Todd Company.

The attorneys for the Todd Company meanwhile sought to stay and prevent the taking of this evidence by such survey in the method described. They excepted to the authority of this court as a court of equity to so proceed, and moved that the order be recalled, vacated, and set aside.

This rule was summarily fixed for hearing, because the motion recited serious charges of sharp practice, dishonest intentions, and improper motives on the part of the government's counsel and agents, and continued over from the 13th to the morning of January 14th, when the petitioner was ordered to produce every officer and member of the crew of the vessel and all parties who had been aboard thereof in open court for examination. The attorneys for the Todd Repair Company were also ordered to produce any witnesses who might substantiate the charges made in the motion.

Upon the hearing, none of the charges made in the motion were substantiated, not-

withstanding the agents and employees and others had been brought to court by the at-fused to place any of them on the stand upon the alleged ground that the court was without authority to proceed.

All of petitioner's witnesses were examined, and I am convinced from their testimony that the original order was meticulously complied with by Commissioner Lanman; that guards had been maintained aboard the vessel, posted about the fire room; that before the water was pumped to the level of the floor no one had entered the fire room from the time of the fire until the survey was made in the presence of representatives of all parties in interest, and the attorneys for the Todd Repair Company admitted specifically that the survey was complete and had been fairly and honestly conducted by the commissioner, although they complained originally that Lanman should not have been appointed because of his employment by the Shipping Board. As hereinabove recited, they refused to place any witnesses on the stand or to cross-examine those of their opponents.

From the whole record I am satisfied that this proceeding was fully justified to prevent anticipated mischiefs that might have resulted from a tampering by any of the parties in interest with the status of the tools, equipment, and machinery, before an authentic survey could be made. I am further satisfied that it was the obvious intent of Congress to facilitate such inquiries by a competent court of equity to prevent failures and delay in the administration of justice. I can see nothing in the contention that parol testimony of witnesses alone was contemplated by the statute. It is easily conceivable that proof of negligence in a suit such as will probably result from this fire would depend largely upon the doctrine of res ipsa loquitur, and I feel assured under the jurisprudence that the question as to whether or not such order was necessary to prevent a failure or delay of justice was one left for this court to determine upon the facts presented. See Westinghouse Machinery Co. v. Electric Storage Battery Co. (C. C. A.) 170 F. 430, 25 L. R. A. (N. S.) 673, and footnotes, more particularly footnotes on page 678, citing Keating v. Sparrow, 1 Ball. & B. 367; Mason v. Goodburne, Finch, 391; Caldwell v. Head, 17 Mo. 561.

Considering the disputes that usually arise in such cases as that indicated here, and that too often indicate alleged disturbances or changes at the situs of the damage, the application here made seems wholly justified and equitable. It is my opinion that an authentic survey, under an order such as was issued here, should be the procedural rule rather than the exception, and that the statute fully sustains it.

Accordingly, a decree may be entered perpetuating the evidence disclosed by the survey of Commissioner Lanman of record herein.