## SPEARS v. COMMONWEALTH et al.

Court of Appeals of Kentucky.

Dec. 19, 1952.

Davies & Hirschfeld, George Muehlenkamp, Newport, for appellant.

J. D. Buckman, Jr., Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellees.

SIMS, Justice.

This appeal is prosecuted by Roosevelt Spears from the judgment of the Campbell Circuit Court denying him a writ of coram nobis. Spears assigns two errors for reversal: (1) The counsel the trial court appointed to defend him on an indictment charging murder was so inexperienced as to amount to no representation at all in that action; (2) the inexperience of his attorney did not appear in the record of the circuit court, therefore this court could not consider it on appeal from the judgment sentencing Spears to death for murder but such inexperience abundantly appears in the record in the instant case.

Appellant was indicted for the willful murder of Charles Edward Thompson. A trial resulted in his conviction and his punishment was fixed at death. On an appeal to this court that judgment was affirmed on May 23, 1950, and the mandate was duly issued on June 27, 1950. While this court was in adjournment for the summer, Hon. C. B. Latimer, a Judge thereof, signed an order on July 21, 1950, suspending the mandate pending the final disposition of this proceeding for a writ of coram nobis. Through a mistake made at that time in the office of the clerk of this court, directions were given not to publish the opinion affirming the death sentence and the same has not been published. An order will be entered directing that opinion to be published when this one goes to the publisher. 253 S.W.2d 566.

Spears is a Negro, the man he killed belonged to that race, as did all the witnesses testifying in the original trial, except the police and coroner. Since Spears was a pauper, the court in the original action appointed Hon. George Muehlenkamp, a regularly practicing attorney of the Newport bar, to defend him. It is averred in the petition filed in the Campbell Circuit Court for the writ of error coram nobis that Mr. Muehlenkamp at the time he was appointed to defend Spears had been practicing less than one year and was so inexperienced in the trial of jury cases he did not ask the court to assign associate counsel to assist him, nor did he move to quash the indictment because no Negroes were on the grand jury which indicted Spears, and the attorney did not object to the trial jury because no Negroes were serving on it. The petition for the writ further avers that Negroes have been systematically excluded for a long number of years from both the grand and petit juries in the Campbell Circuit Court. It is further averred in the petition the killing occurred on January 25, 1949, the indictment was returned on February 21, counsel was appointed on March 10 to defend Spears and the case was set for trial on March 14, and continued until March 21, 1949, on his attorney's motion. Since Spears was confined in jail from the day of the killing until the day of his trial on March 21, the petition avers he could not assist his attorney in locating witnesses and in preparing for trial, and it was not until after the trial that he and his attorney discovered there was an air rifle, or B-B gun in the room where the killing occurred; that this air rifle so resembled a shotgun it would have supported Spears' testimony that deceased was armed with a shotgun at the time of the killing and Spears acted in his apparently necessary self-defense.

Hon. William J. Wise, the regular Commonwealth Attorney who prosecuted Spears, filed an answer to the petition for the writ which was a general denial of the

material averments upon which Spears relied in his petition to obtain coram nobis. Proof was taken upon the issue made by the pleadings, and the Judge of the Campbell Circuit Court denied the writ.

The question of the inexperience of counsel, Mr. Muehlenkamp, appointed to defend Spears, was before this court on the original appeal, therefore it cannot be considered in this action for coram nobis. Anderson v. Buchanan, 292 Ky. 810, 168 S.W.2d 48. It was written in the Spears opinion: "A study of the record convinces us that for one admitted so recently he [Muehlenkamp] possesses unusual knowledge of criminal law and procedure. As the Attorney General points out in his brief, he represented his indigent client with unusual skill and ability. Our laws do not prescribe the experience or qualification an attorney should have for representing any defendant."

In passing it might be well to note that inexperience, incompetency or inefficiency of counsel is not ground for granting coram nobis. Ex parte Gammon, 255 Ala. 502, 52 So.2d 369; People v. Egan, 73 Cal.App.2d 894, 167 P.2d 766, certiorari denied 329 U.S. 753, 67 S.Ct. 91, 91 L.Ed. 649; Snell v. State, 158 Fla. 431, 28 So. 2d 863, certiorari denied 331 U.S. 830, 67 S.Ct. 1352, 91 L.Ed. 1844; Putnam v. People, 408 Ill. 582, 97 N.E.2d 841; U. S. ex rel. Steele v. Jackson, 171 F.2d 432, certiorari denied 336 U.S. 939, 69 S.Ct. 742, 93 L.Ed. 1097. An examination of 24 C. J.S. Annual Pocket Supplement, Criminal Law, § 1606, page 21 will show many other jurisdictions, both state and federal, follow this rule.

Appellant places his chief reliance upon the averment in his petition that Negroes were systematically excluded from both the grand and petit juries and none were on the grand jury which indicted him, nor the petit jury by which he was tried. The proof does not sustain this averment. Harold Reed, a member of the jury commission in 1949, testified that Judge Murphy (the Judge of the Campbell Circuit Court) instructed the jury commissioners to put the names of Ne-

groes in the jury wheel, and the commissioners did as instructed. John Macht, another member of the 1949 jury commission, testified the names of Negroes were placed in the jury wheel. Two members of the 1948 jury commission, Lucille Veith and John Thornton, both testified the jury commissioners for that year put the names of Negroes in the wheel. Judge Murphy testified that he had been Judge of the Campbell Circuit Court continually since 1940 and he has instructed all jury commissioners which have been appointed by him to put the names in the jury wheel of members of the colored race entitled to serve; that "there have been numerous names of colored persons drawn from the jury drum for jury services. * * * On several occasions we had a member of the colored race on petit juries. I have no recollection of a colored person ever having served on a grand jury since I have been on the bench". Judge Murphy further testified that 80% of the colored people drawn for jury service asked to be excused, and that seveal colored persons whose names had been drawn for jury service could not be located by the sheriff.

Opposed to this testimony was that of Dr. Percy L. Bacchus, a prominent colored physician of Newport, who stated there were some 350 colored families in the city and in 19 years he only knew of one colored person serving on a jury. He stated another colored person he knew was summoned for jury service but the doctor did not know whether he served. Booker Inggullus testified that in 29 years he only knew of one colored person serving on the jury, but he further stated the wife of Dr. Horner, a colored physician, had been summoned but could not serve because she had moved to Ohio. The present Circuit Court Clerk, John B. Drahmann, who took office in 1946, and his predecessor in office, Richard W. Phillips, who served 18 years previous to 1946, both testified but few colored persons had served on the petit jury and none on the grand jury.

A comparatively small percent of the population of Campbell County are Negroes. Dr. Bacchus places the Negro

population of Newport at 2,000, but he does not estimate it for the entire county which has a population of slightly over 76,000. It is not the rule that a colored citizen has a right to a jury composed in part of his own race, but can only rightfully demand a jury from which his race has not been excluded because of color. Bush v. Com. of Ky., 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354; Pool v. Com., 308 Ky. 107, 213 S.W. 2d 603. Both this court and the United States Supreme Court have held that the names of Negro citizens need not be placed in the jury wheel in the same proportion that the Negro population bears to the white population in order to observe in good faith the constitutional rights of Negro citizens. Pool v. Com.; Hale v. Com. of Ky., 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050; Gilchrist v. Com., Ky., 246 S.W.2d 435; Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692.

■ It is provided in KRS 29.070 that jury commissioners shall take the last returned tax commissioner's book (except in counties containing a second class city and a court of continuous session, where the commissioners shall take the last returned registered election voters' book for the county or the last returned tax commissioner's book) "and from it shall carefully select from the intelligent, sober, discreet and impartial citizens, resident housekeepers in different portions of the county over twenty-one years of age," the number of jurors set out in the statute for the various counties. The record in the instant case shows the commissioners used the election book rather than the tax commissioner's book. It is common knowledge that but relatively few citizens appearing on the election book meet the qualifications of a juror, and many of those who do make every effort to be relieved of this onerous but patriotic duty of citizenship.

■ It is provided in KRS 29.070(d) that a county with the population of Campbell County shall have 1,000 names placed in the jury wheel each year. The wheel is filled at least once each year, KRS 29.-050, and the names that are not drawn one year could be put back for the next year and not be drawn for that year and be put back again and still not be drawn. Therefore, it is possible that some names may be put in the wheel for years without being drawn out of it. Under Pool v. Com., 308 Ky. 107, 213 S.W.2d 603, and Gilchrist v. Com., Ky., 246 S.W.2d 435, and the authorities cited in those two opinions, it cannot be said with reason that Negroes were systematically excluded from jury service in Campbell County.

■ If Spears or his attorney believed that Spears' constitutional rights had been abridged by reason of no Negroes having served on the grand jury which indicted him, or on the petit jury which tried him, a motion could have been made to quash the indictment as well as to discharge the trial panel when the case was called for trial. Both Spears and his attorney knew there were no Negroes on the petit jury, and by inquiry from the jury commissioners or the clerk of the court they could have readily ascertained whether there were any Negroes on the grand jury. It is necessary that a petition for coram nobis aver facts showing the exercise of diligence on the part of accused or his attorney to discover any irregularities in the empanelling of the grand jury which indicted him and the petit jury which tried him. Having failed to do so, accused cannot now obtain a writ of coram nobis on the ground this was a hidden mistake of fact in his trial which could not have been discovered by due diligence in time to have been presented to the court which tried him. Duff v. Com., 296 Ky. 689, 178 S.W.2d 191.

■ The petition averred that neither accused nor his counsel knew "until after the trial had commenced, that on the second day thereof, that there was in the room where decedent was located, a gun identified as an air rifle or B.B gun; that, had said fact been known to plaintiff or his counsel, he would have had an opportunity to bring said gun, or one of comparable appearance, into court to demonstrate the similarity in size to a shotgun". This averment shows a fact which was known on the second day of the trial and of which advantage was not taken. Coram nobis

will lie where accused desires to bring some new fact before the court which could not have been discovered by due diligence on his part in time to have been presented at the trial or on his motion for a new trial. Anderson v. Buchanan, 292 Ky. 810, 168 S.W.2d 48; Ford v. Com., 312 Ky. 718, 229 S.W.2d 470. Here Spears avers in his petition that he knew of this particular gun in time to have presented it in evidence had he so desired; therefore, he cannot obtain a writ of coram nobis on the ground he and his attorney did not discover this fact until during the second day of his trial.

We perceive no error in the record which is prejudicial to the substantial rights of the petitioner, therefore the judgment denying coram nobis is affirmed.