Danny PATTERSON and Charles Gilmore, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 3, 1977.

Discretionary Review Denied Oct. 3, 1977.

Jack Emory Farley, Public Defender, Timothy T. Riddell, Asst. Public Defender, Com. of Ky., Frankfort, for appellants.

Robert F. Stephens, Atty. Gen., Deedra Benthall, Asst. Atty. Gen., Frankfort, Eddie C. Lovelace, Commonwealth Atty., 40th Judicial Circuit, Albany, for appellee.

Before WHITE, LESTER and HOGGE, JJ.

WHITE, Judge.

The appellants were convicted of first degree rape by forcible compulsion and were sentenced to serve ten years in the penitentiary. While both of the appellants are young men in their twenties, one of them, Danny Patterson, is white, and the other, Charles Gilmore, is black.

The prosecuting witness is an 18-year-old white woman. She testified that about 1:00 p. m. on February 1, 1976, while she was walking down Morris Hill Road, she was assaulted by the passenger of a black and white car. She positively identified appellant Patterson as her assailant. Her testimony was that she struggled, but was dragged from the roadside into a wooded area by appellant Patterson with the help of a bearded black man. There the two men raped her.

In court, she identified Gilmore as one of her attackers. Evidence was also introduced to show that Gilmore was the owner of a black and white car and that two other witnesses had seen Gilmore driving a black and white car on Morris Hill Road that day. The appellants, upon being arrested separately, each claimed they had spent the whole day of February 1, 1976, together.

The appellants' defense was alibi and misidentification. Testimony from witnesses for the defense indicated that appellants could not have been on Morris Hill Road at the time of the rape, and that Gilmore did not have a beard at the time of the rape and, therefore, was not involved.

On appeal, Patterson and Gilmore allege prejudicial error in several respects. We will deal with each allegation in turn.

Appellants argue that their sixth and fourteenth amendment rights to a fair trial were violated by the systematic and intentional exclusion of blacks and young persons from the jury. Prior to trial, appellants moved the court to quash the jury panel for this reason, and the motion was denied. It was stipulated in the record that approximately thirty percent of the voter registration list in Wayne County was composed of persons under thirty years of age. Furthermore, it was stipulated that one percent of the voter registration list was composed of black persons.

The defense counsel noted that only two of the seventy people whose names were selected from the jury wheel for the trial of this case were under the age of thirty. Later defense counsel testified that this same small percentage of blacks and young people on the *jury panel* had prevailed since November, 1973. (emphasis ours)

██ We agree with the trial court that the appellants have not shown a systematic and intentional exclusion of these groups. As was said in *Tinsley v. Commonwealth,* Ky., 495 S.W.2d 776 (1973):

> *Swain* [*v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759] and *Alexander*

*v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536, specify in detail the procedure to be followed by defendants asserting systematic exclusion of a group or race from jury panels or invidious discrimination in the selection of citizens to serve as jurors. We cannot presume non-permissible methods of jury selection in this case absent a showing . . . in conformity with *Swain* and *Alexander.* Such a showing entails a taking of proof from the jury commissioners or a showing of the makeup of jury panels for a period of time so as to make a prima facie case of invidious discrimination.

The mere fact that the representation of young people on jury panels has been disproportionate does not establish a prima facie case of invidious discrimination. This is so because the drawing of the panels from the drum or wheel depends on chance. *Gilchrist v. Commonwealth,* Ky., 246 S.W.2d 435 (1952). They have not been excluded from the panels, as was made clear in the stipulations and by defense counsel's testimony. Neither does *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), afford appellants relief. There the court said at 538, 95 S.Ct. at 702:

> It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, [citations omitted], but the jury wheels, pools or names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

■ We interpret this to mean that the manner in which proof was adduced in *Swain* and *Alexander* should also be utilized in an attack upon the composition of the jury, i. e., a taking of proof from the jury commissioners as to the selection of names to fill the jury wheel or drum as per *Ky.*

*Rev.Stat.* § 29.075 [hereinafter cited as KRS]. Discrimination is based upon what goes into the wheel rather than the composition of what comes out of the wheel. This is not to say that invidious discrimination cannot be proven by exclusion from the jury panels in the proper case. *Taylor v. Louisiana, supra; Gilchrist v. Commonwealth,* 311 Ky. 230, 223 S.W.2d 880 (1949). Rather, in the present case, the appellants have failed to show a systematic and intentional exclusion.

■ Appellants' second contention is that the court erred in denying a motion for mistrial after the commonwealth was allowed to introduce hearsay testimony of an unidentified informant.

Officer Morrow testified that "[u]pon arrival at my informant's home, he advised me that he saw Charles Gilmore that afternoon going down the street driving the automobile." This testimony was repeated twice in front of the jury. The court later admonished the jury not to consider the portion of Morrow's testimony pertaining to information received from an unidentified informant.

A review of the evidence in this trial convinces us that Morrow's testimony was merely cumulative to the testimony of two other witnesses, Ronnie Bartleston and Allen Duncan. These two witnesses testified they saw Charles Gilmore driving down Morris Hill Road the afternoon of the rape. In light of this evidence, we hold the court's ruling not to be prejudicial. R Cr 9.24.

■ Appellant Gilmore made motions for a directed verdict which were overruled. Gilmore argues on appeal that there is insufficient evidence upon which to convict him of first degree rape. His argument is based upon the victim's admission on cross-examination that there was a reasonable doubt in her mind that Gilmore was the black man that raped her. However, in light of her identification of Gilmore on direct examination and upon a review of the circumstantial evidence offered by the commonwealth, there was sufficient evidence to support a conviction. *Challenor v.*

*Commonwealth*, 248 Ky. 628, 59 S.W.2d 567 (1933).

The appellants next contend that it was error for the trial court to refuse to instruct the jury on the offense of sexual misconduct [KRS 510.140]. We disagree. As the commentary to KRS 510.140 in *Criminal Law of Kentucky Annotated* (1975), points out, ". . . the basic purpose of KRS 510.140 is to preserve the concept of statutory rape and statutory sodomy." The commentary notes that "[f]orce is not an element of this offense."

In the case at hand, the only evidence as to the rape showed that force was used. Furthermore, the victim was eighteen years old at the time of the attack. The trial court was correct in refusing to give an instruction pursuant to KRS 510.-140. *Cooper v. Commonwealth*, Ky., 550 S.W.2d 478 (1977), 24 K.L.S. 2.

Likewise we find no prejudicial error in the prosecutor's closing argument. In the first place, the issue of prejudicial argument has not been preserved for review through lack of objection. R.Cr. 9.22. Secondly, we find no prejudicial error in the prosecutor's statement that ". . . it's hard for me to tell people of the Negro race apart." He was merely trying to explain the prosecuting witness's difficulties in identifying one of her assailants. Neither do we find any error where the prosecutor stated that rape was not conduct befitting a member of the human race.

Appellants' last contention is that the judgments should be vacated and remanded for resentencing pursuant to the procedures set out in KRS 532.050 and KRS 533.010. There is no indication in the record that a presentencing report was ordered or considered by the trial judge in sentencing as required by KRS 532.050. Neither is there any indication in the record that probation was considered as is required by KRS 533.010. Lastly, the commonwealth conceded error on this point in oral argument.

This court, though fully realizing that appellants were sentenced to the minimum sentence, is constrained under the authority of *Brewer v. Commonwealth*, Ky., 550 S.W.2d 474 (1977), 24 K.L.S. 1, to vacate and remand. In *Brewer* the Supreme Court of Kentucky held:

The requirement placed upon a trial court by the statute is mandatory and does not afford a trial judge the privilege or discretion of determining whether the report will be requested, obtained, or considered. It is a "must" and is in fact a prerequisite to the entry of a valid judgment. In view of the mandatory character of this requirement, the record of the proceeding should clearly disclose the fact that the trial court has fully complied with KRS 532.050 by requesting a presentence investigation, examining and considering the written report as supplied, and informing defendant or his counsel of the factual contents and conclusions contained in the report and the fact that the defendant either requested or did not request time within which to controvert the factual data contained in the report.

The court also held:

Even though the trial court had discretionary authority under KRS 533.010 regarding the granting of parole or conditional discharge, it was required to consider the feasibility of this procedure. In view of this rule, the record of the proceedings leading up to the entry of the judgment should clearly reflect the fact that the consideration required by KRS 533.010 had been afforded the convicted person before judgment was finally entered.

Finding no other error, the judgment is vacated and the case remanded for resentencing after there has been compliance with KRS 532.050 and KRS 533.010.

All concur.